

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00104-CR

DONALD ROBERT HANEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Red River County, Texas
Trial Court No. CR01693

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter
Concurring Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Pursuant to a negotiated plea agreement, Donald Robert Haney pled guilty to the offense of indecency with a child and was placed on five years' deferred adjudication community supervision.[1] The trial court subsequently found that Haney violated the terms and conditions of his community supervision, adjudicated his guilt, sentenced him to ten years' imprisonment, and ordered him to pay a $500.00 fine. On appeal,[2] Haney argues that the court "abused its discretion by revoking Haney's probation on a ground not alleged or necessarily included in the State's motions to adjudicate." Haney's argument is that he was revoked for violating condition 31 of the terms of community supervision.[3] We disagree and find that the trial court revoked Haney's community supervision on proof of the allegation that he committed an offense by failing to comply with sex offender registration requirements, a ground that was specifically included in the State's motion to proceed with adjudication. Accordingly, we affirm the trial court's judgment.

I.      **Standard of Review**

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2013). This decision rests within the discretion of the trial court. *Rickels v. State*, 202 S.W.3d

---

[1]The order of deferred adjudication required Haney to complete 120 hours of community service, register as a sex offender, and pay a $500.00 fine, a $50.00 Crime Stoppers fee, and court costs.

[2]In cause number 06-13-00105-CR, Haney also appeals from his conviction of a second count of indecency with a child on the same ground.

[3]Condition 31 required that Haney not have access to a computer or the Internet without permission of the Community Supervision and Corrections Department.

759, 763 (Tex. Crim. App. 2006); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight to be given to the testimony. *T.R.S.*, 115 S.W.3d at 321. Review of a trial court's decision regarding community supervision revocation is examined in a light most favorable to the trial court's order. *Id.*

To revoke community supervision, the State must prove by a preponderance of the evidence every element of at least one ground for revocation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2013); *T.R.S.*, 115 S.W.3d at 320. If the greater weight of credible evidence created a reasonable belief that Haney violated a condition of his community supervision, then the standard was met. *T.R.S.*, 115 S.W.3d at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)). Also, if a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)).

## II. The Trial Court Adjudicated Guilt Because it Found Haney Committed the Offense of Failure to Comply with Sex Offender Registration Requirements

Haney's point of error argues that the trial court adjudicated his guilt based on a violation of condition 31of the terms of his community supervision, "a ground not alleged or necessarily included in the State's motion to adjudicate." We find otherwise.

The State filed a motion to proceed to adjudication on the grounds that Haney "committed the offense of Failure to comply with Sex Offender Registration on or about

3

February 13, 2013 in Red River County, Texas," and willfully failed to pay fines, court costs, and fees.[4] A revocation status report, filed with the motion, stated that "[d]efendant failed to give internet sites that he was apart [sic] or had an account with to Chief [David] Short upon registration. Defendant failed to give information to [Community Supervision and Corrections Department] as well."

Because Haney was placed on deferred adjudication community supervision for indecency with a child, Article 42.12, Section 13G(b) required the trial court to prohibit Haney from "using the Internet to: (1) access material that is obscene . . . ; [and] (2) access a commercial social networking site,[5] as defined by Article 62.0061(f)." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13G(b) (West Supp. 2013). In compliance with Article 42.12, the trial court's order imposing conditions of community supervision prohibited the commission of another offense, and in condition number 31 prohibited Haney from accessing a computer or the Internet without approval from the Community Supervision and Corrections Department.

---

[4]Although Haney pled true to failure to pay the fines and fees, Haney was indigent, and the trial court indicated that it probably would not have revoked Haney solely for failing to pay fines and fees. The court made no finding with respect to the fines and fees, as shown in the judgment adjudicating guilt, which reflects a plea of not true to the State's allegations.

[5]The Texas Code of Criminal Procedure defines a commercial social networking site as

an Internet website that:
    (A) allows users, through the creation of Internet web pages or profiles or other similar means, to provide personal information to the public or other users of the Internet website;
    (B) offers a mechanism for communication with other users of the Internet website; and
    (C) has the primary purpose of facilitating online social interactions . . . .

TEX. CODE CRIM. PROC. ANN. art. 62.0061(f) (West Supp. 2013).

4

The trial court's order imposing conditions of community supervision prohibited the commission of another criminal offense. We find the evidence supports a finding that Haney committed the offense of failing to comply with sex offender registration requirements.

"A person who . . . is required to register as a condition . . . [of] community supervision" shall report "the identification of any online identifier established or used by the person" within seven days. TEX. CODE CRIM. PROC. ANN. art. 62.051(a)(1), (b)(7) (West Supp. 2013). Failure to comply with the registration requirements of Chapter 62 is a felony. TEX. CODE CRIM. PROC. ANN. art. 62.102 (West Supp. 2013). Chapter 62 further requires that "[i]f a person required to register under this chapter changes any online identifier included on the person's registration form or establishes any new online identifier[6] not already included on the person's registration form, the person, . . . shall report the change or establishment to the person's primary registration authority . . . ." TEX. CODE CRIM. PROC. ANN. art. 62.0551(a) (West Supp. 2013).

Staci Moore, head of the Red River County Community Supervision and Corrections Department, testified that Haney was required to register as a sex offender and that he was informed that he needed to terminate any social media sites on the day he was placed on community supervision. Haney's pre-release Texas Sex Offender Registration Program notification form contained his initials beside the following requirement: "**Change in Online-**

---

[6]"Online identifier" means

> electronic mail address information or a name used by a person when sending or receiving an instant message, social networking communication, or similar Internet communication or when participating in an Internet chat. The term includes an assumed name, nickname, pseudonym, moniker, or user name established by a person for use in connection with an electronic mail address, chat or instant chat room platform, commercial social networking site, or online picture-sharing service.

TEX. CODE CRIM. PROC. ANN. art. 62.001(12) (West Supp. 2013).

**Identifiers:** Not later than the 7th day, I shall report any changes to online identifiers or establishment of any new online identifier not already included on my registration form to my primary registration authority in the manner prescribed by the authority." Moore explained, "The only way they are allowed to have Internet is if they're on a monitoring system, but even at that point, they're not allowed to have social media Web sites," including Facebook. Bogata police chief David Short served as Haney's primary registration authority.

Short discovered that Haney was maintaining accounts, using an alias, on numerous social media websites, including Tagged.com, Swap.com,[7] WeFollow.com, Hi5.com,[8] Photo.net, PoemHunter.com, Wunderground.com, and MyLife.com. Short also discovered "a Facebook site registered to Donald Haney." Haney testified that he opened the Facebook account "towards the end of December, maybe the very first of January." Haney told Short that the Facebook page had been approved by Moore. Short contacted Moore about the websites, and Moore indicated that she had not discussed Facebook with Haney beyond informing him that he could not have it.

Moore called Haney to confront him about the Facebook account. According to Moore, "[Haney] admitted to me he did have a Facebook page, and then he told me that his sex offender

---

[7]Haney testified that the Swap.com account, which is a website that facilities the swapping of items such as books, CDs, and video games, was activated after he was placed on community supervision.

[8]Short testified, "Hi5.com, you know, it comes on and points out that it's basically like a Web site for teenagers to talk to each other and stuff like that. On this particular Tagged site, the two victims [of the indecency counts] are on here as friends." The Tagged.com account included a "girl [that] appears to be naked, appears to be a teenager. She could be older." David Jernigan testified that Haney was using Tagged.com three months prior to the discovery of the Facebook page and that his webpage had "a lot of provocative style pictures . . . , women in brassieres and other type of clothing that . . . would be considered not appropriate I would believe."

6

counselor, Mr. Peter Asher, had approved him to have a Facebook page."[9] Moore contacted Asher and confirmed that Haney had not been granted such approval. Moore testified that Haney had violated a condition of his community supervision because he was prohibited from maintaining a social media website, had not gotten approval to do so, and failed to timely comply with Chapter 62's registration requirements.[10]

Patty Denise Wilburn, who lived with Haney, said that he got a computer in December 2012. Asserting a misunderstanding, Haney testified,

> The place I work at, Bogata Food Mart, was asking me, because I'm a tech junky, they were asking me if I'd be willing to run their Facebook page for them, for the store. In order for me to do that, I had to have a Facebook account. I told them I'd have to check into it, you know, and I asked Mr. Asher about would it be okay, you know, to do it, for having to do it for work, because I have to have my account. They put me as a manager -- put my account down as the manager of their account. I log in to mine, and I can update theirs. And at that point, Pete said that he didn't see an issue with it, and that's where it goes.

Asher told the court that he never granted Haney permission to create a personal Facebook page. Content from the Facebook page as well as from other social media website accounts Haney maintained was introduced as evidence.

The trial court adjudicated guilt after hearing this evidence. Because we find that the greater weight of credible evidence demonstrating Haney's failure to report online identifiers

---

[9]Haney was required to obtain Moore's permission to have a computer. Haney was also required to obtain permission to access the Internet, which would only be granted after verification that he had an Internet monitoring service. Moore first discovered that Haney was using a computer to access the Internet when she called him in to confront him about the Facebook account.

[10]Short testified, "[W]e went ahead and did the registration, and he gave me the Facebook information at that time. This is way more than seven days after he got the -- so he was already in violation . . . . He had been on it a year. He had plenty of time, and, in my opinion, he knew without a doubt that he was breaking the rules." Although the Facebook account was registered, Haney's other accounts were not. Officer Jernigan testified this was a violation of the terms of Haney's community supervision.

7

created a reasonable belief that Haney violated the condition prohibiting the commission of a new offense, we conclude that the trial court did not abuse its discretion in adjudicating Haney's guilt.[11]

Yet, Haney argues that the trial court's revocation was "based solely on [a finding of] impermissible internet access." In making his argument, Haney refers to condition number 31 of his community supervision, which stated that Haney could not "own, have access to, or use a computer, the Internet, or any device capable of accessing the Internet except as permitted by the Community Supervision Officer in charge of your case . . . ."[12] He states that "no credible evidence indicated Haney violated condition number 31."[13]

In issuing its ruling, the trial court stated,

When I look at the terms and conditions of probation, and I look at No. 29, I'm just going to read the last half of it. It says, does not possess, send, or receive by

---

[11]In his brief, Haney questions whether he received proper notice of the State's allegations in the motion to proceed with adjudication. In the trial court, Haney filed a "Motion to Quash and Exception to Substance of the Motion to Proceed with Adjudication," arguing that

> the Motion to Proceed with Adjudication is insufficient because it fails to contain the specific elements of the offense of Failure to Comply with Sex Offender Registration on or about February 13, 2013, fails to fairly inform the defendant of the charge against which he must defend, and because it fails to enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.

The trial court decided to "carry" the motion and allow the hearing on the State's motion to adjudicate to proceed. After the State presented its case, the trial court continued the hearing for two weeks to give Haney an opportunity to put on any other evidence he deemed relevant. Haney admits that "even if the Motions to Proceed with Adjudication were not specific enough to give . . . proper notice, the trial court gave . . . adequate time to respond to the allegations after the Motions were clarified during trial testimony." His reply brief clarifies that "the motions to quash [are] not the basis for [this] appeal." Accordingly, we do not construe Haney's brief as presenting a separate point of error related to notice.

[12]This order also required Haney to "pay a $60 per month community supervision fee" and to pay his fines and fees at a rate of $23.00 per month.

[13]A fair reading of condition number 31 leads us to conclude that it was part and parcel of the failure to comply with sex offender registration requirements offense.

electronic mail anything that is sexually oriented or portrays nudity in children or adults. Now, I think some of the exhibits have kind of bled over into that, but, there again, I'm trying hard not to consider that because that's not what's before me. Am I making sense? I hope. There again, I'm looking strictly at No. 31.

The court ruled,

I do think there's a clear violation of No. 31, and, there again even -- and I caught when he was testifying that even he used the word that he accessed, and that's exactly what the word in No. 31 says you're not supposed to do. You're not supposed to be able to access the Internet, and I think that's what's happened.

Citing to this language, Haney argues, "The State never claimed Haney had impermissible internet access." He believes that the trial court failed to "focus on the Facebook issue."

However, prior to hearing Haney's evidence and arguments, the trial court clarified the issue during the following discussion:

[THE COURT]: . . . . It alleges a violation on February the 13th of not of going to certain Web sites, but just not reporting the fact that he has a computer and that he's using it to the probation office. . . . The question before me is whether or not, on or about April 13th, he had access to a computer, and he didn't report it to probation. The probation officer has already said that he hadn't reported that. I think the chief of police, even from when he testified, basically said when he visited with him, he said he didn't -- hadn't reported the fact that he had a computer.

. . . .

And then I fast forwarded to, I guess, it's the document, the order imposing conditions for community supervision, and I looked at No. 31. And it says, do not own, have access to, or use a computer, Internet, or any other device capable of accessing the Internet except as permitted by the community supervision officer in charge of your case. And that's where the paragraph in the Motion to Revoke, I guess, came from. And so -- go ahead.

[Defense Counsel]: Judge, they knew he had a computer. He had a program on it to monitor the computer. I mean, I think the State was well aware

9

that he had a computer. I don't think there's any testimony that he lied about having a computer. It was whether or not he knew that the Web site that he was on --

THE COURT: Yeah. That's the part I'm about to get into right now. . . .
So, you know, did he have a -- yeah, could you own a computer, yeah. Can you access those sites without letting probation know? I don't think so. I think that's what they're wanting -- I think that's where the Motion to Revoke comes from.

[Prosecutor]: That's what it's about. He can't access these social sites without letting them know.

THE COURT: That's what I'm saying.

Thus, the court understood that the issue was whether Haney maintained social networking sites without reporting them in accordance with sex offender registration requirements. Although Haney is correct in stating that access to the Internet did not equate to a violation of his community supervision as alleged in the motion to revoke, access to the Internet was a prerequisite to Haney's development of online identifiers. In this case, the creation of online identifiers without the permission of his Community Supervision Officer, and failure to report the identifiers is what led to the offense of failure to comply with sex offender registration requirements.

We overrule Haney's point of error because we find the argument to be without merit.

III. Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

10

CONCURRING OPINION

The legal proceedings that resulted in the adjudication of guilt of Donald Robert Haney for two charges of indecency with a child were not a model of clarity. The State's Motion to Adjudicate alleged that Haney failed to pay various fees and, germane to this discussion, committed the offense of failure to comply with his sex offender registration requirements under Chapter 62 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001–.408 (Chapter 62) (West 2006 & Supp. 2013); *see also* TEX. CODE CRIM. PROC. ANN. art. 62.102 (felony for registrant not to comply with any provision of Chapter 62). When Haney was originally placed on deferred adjudication community supervision, he was placed under numerous conditions, the first being an obligation not to commit any new criminal offense under state law.[14] When Haney's community supervision officers found out that Haney had been using Facebook and various other social media sites on the Internet in contravention of instructions they had given him and that he had failed to tell them of his activities, they triggered the process that produced Haney's adjudication of guilt.

At the beginning of the hearing on the State's Motion to Adjudicate, Haney's counsel asked that the State's motion be quashed, because it was too vague. In truth, the motion was pretty general and did not specify what Chapter-62 registration requirements Haney was accused of having violated. In response, the State summarized the heart of its case:

> [Haney] failed to comply with the sex offender registration because he wasn't completely truthful in filling out the form, and a part of registration is, is that you

---

[14]Among Haney's other conditions were condition 23, to comply with all sex offender registration requirements of Chapter 62; condition 29, not to possess or use sexually oriented images; and condition 31, not to access a computer or the Internet "except as permitted by the Community Supervision Officer in charge of [Haney's] case."

11

can't have on-line computer, like Facebook and so forth. And then if you don't tell them or disclose it, you lie about it, then that's a violation of the registration requirements.

The problem argued here by Haney is that, although the State sought to adjudicate Haney on the basis of Haney's breach of condition 1 of his community supervision—committing the criminal offense of failing to comply with Chapter 62—the trial court, after hearing the evidence, discussed on the record its opinion that Haney violated condition 31. Condition 31 forbade Haney's computer or Internet access except as permitted by his community supervision officer. In its discussion, in contrast to condition 31, the court mentioned condition 29, which was not in issue. Condition 29 forbade Haney from using or possessing sexually oriented images. While the trial court's express finding that Haney violated condition 31 raises questions—it is nowhere stated that Haney's breach of condition 31 might also establish a breach of condition 1—I believe the context suggests that the trial court was using the contrast between conditions 29 and 31 to explain its basis for an adjudication based on Haney's Internet use.

The logic of that conclusion takes some explaining. Condition 31 prohibits Haney's computer and Internet use except to the extent permitted by his community supervision officer. Among the conditions imposed on Haney's computer use by his community supervision officer was to avoid social media use and, as required by the registration form and Chapter 62,[15] to report and keep current his report of any online identifiers[16] Haney used in connection with

---

[15]Online identifiers must be disclosed as part of sex offender registration. TEX. CODE CRIM. PROC. ANN. art. 62.051(c)(7) (registration form requires that information), art. 62.051(g) (registrant obligated to see all information in form is complete and accurate).

[16]The statutory definition of "online identifier" is broad enough to include many things:

online activities.  Importantly, Haney's failure, while under community supervision, to report on his Internet activity, including his online identifiers, as demonstrated by the evidence adduced in the adjudication hearing, established three things simultaneously:  a violation of condition 31, a violation of Chapter 62, and a felony offense in its own right, which criminal offense breached Haney's condition 1, as pled by the State as the basis for Haney's adjudication.  *See* TEX. CODE CRIM. PROC. ANN. art. 62.0551 (registrant to report new or changed online identifiers within seven days), art. 62.102 (felony for any Chapter 62 violation by registrant).

For the reason set forth above, I concur with the majority.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 27, 2013
Date Decided:       January 30, 2014

Do Not Publish

---

"Online identifier" means electronic mail address information or a name used by a person when sending or receiving an instant message, social networking communication, or similar Internet communication or when participating in an Internet chat.  The term includes an assumed name, nickname, pseudonym, moniker, or user name established by a person for use in connection with an electronic mail address, chat or instant chat room platform, commercial social networking site, or online picture-sharing service.

TEX. CODE CRIM. PROC. ANN. art. 62.001(12).

13